May it please the Court, my name is John Mottram and I'm appearing on behalf of the Appellant, Farmers Insurance Exchange. As a preliminary matter, the Appellants would like to reserve three minutes for rebuttal in this matter. The issue before the Court in this matter concerns the interpretation and application of Rule 68. Could you pick your voice up just a little bit, please? Sure. The issue before this Court involves the interpretation and application when a Rule 68 offer is accepted and thus there has not been a trial on the merits. Proper application of Rule 68 requires that the Court enforce the terms of an accepted unambiguous offer. The critical distinction in this case is that the Rule 68 offer was accepted. And this is also the critical distinction with regard to the Court's inquiry as to how the recent Ninth Circuit case of Champion applies to this case. The distinction is critical because the Court is required to apply a different standard when a Rule 68 offer is accepted. And that standard has been set forth by the Ninth Circuit in the matter of Erdman v. Cochise County. And that authority sets forth that once an offer, a Rule 68 offer is accepted, the Court does not possess the discretion to alter or modify the agreement of the parties. What constitutes the contract exactly? I believe that the contract, what constitutes the contract is the language of the offer, of the Rule 68 offer itself, as well as the express language of Rule 68. Just the offer and the acceptance, anything else, or is that just the whole package? Just, and the terms, the express language of Rule 68 itself, because the rule itself implies it's mandatory that costs are a component of any Rule 68 offer. And this position was upheld in the Merrick v. Chesney case that's been cited by the appellants. This result concerning the lack of discretion to modify or alter the agreement of the parties has also been upheld in the Sixth Circuit, Seventh Circuit, and Eighth Circuit. And I would point the Court towards the Seventh Circuit case of Webb v. James, 147 F. 3rd, 617. But the fact that appellants accepted the offer is critical in this case, because when Rule 68 is triggered, the plain language of Rule 68 provides for a mandatory award of costs. Not only is it a mandatory award, or is it an entitlement to ask for an award? I believe that pursuant to the U.S. Supreme Court's case in Delta Airlines v. August, at 450 U.S. 346, that once Rule 68 is triggered, the award of costs is mandatory. Well, there's a difference between costs and attorney's fees, correct? There is, typically speaking. But where, as such is the case here, the underlying substance of statute defines costs to include attorney's fees, the Merrick v. Chesney case says attorney's fees are treated as costs for purposes of the award. Now, here we're dealing with a State statute, correct? That's correct. The Washington Consumer Protection. That's correct. And does the statute itself define attorney's fees as costs in this case? It does, indeed. And has the Washington Supreme Court or courts of appeal put any other qualifications on the award of attorney's fees under that statute? Well, I think what the Court looks to is that the actual language of the attorney fee statute itself includes mandatory language for the award. After that language concerning costs, including reasonable attorney's fees, the Court then provides a discretionary function for the Court to award treble damages. Thus, by the plain language of the rule itself, the award of costs, including attorney's fees, is mandatory. That's assuming you prevailed on the Consumer Protection Act claim. There were other claims, too, right? That would be correct, which I think brings us full circle to the fact that this is a Rule 68 accepted offer. The whole purpose of accepting a Rule 68 offer is to promote settlement. By its very nature – That's true, but doesn't SECO's proof say when it's not clear which one you prevail on, the judge is supposed to decide which claims? Only from the standpoint when the Court is required to add an additional term to a Rule 68 offer, where here the offer by its very terms is indisputed. The offer included a lump sum, and the offer included costs. The Court is supposed to enforce the terms of the offer. In SECO's, we had a situation where the offer was silent as to a component of the offer, i.e., fees. And therefore, the Court had to provide an analysis of what they do when they have to read in an additional component of the offer. In our case, costs were an explicit component of this offer that's not disputed by cadet. So the only job for the Court at this point is to define what costs are, and they clearly include insurance fees. Well, given that point, you still have to be a prevailing party even under the State statute, correct? Not necessarily. And that's why it's so critical that this is an accepted offer of judgment. What do you do with Wal-Mart stores? The Washington Court said that you have to be a prevailing party, even though the statute doesn't provide for it. Well, I think the critical issue to look at is the fact that it's the fact that when a party accepts a Rule 68 offer, its settlement, which by its very nature removes the necessity for judicial fact-finding and for a determination of the merits. If a party who accepts a Rule 68 offer is still required to prove the merits of their case, which they really can't do so in the absence of trial, it absolutely undermines the operation of Rule 68, because clients will never want to. You still have to be a prevailing party under the statute, isn't it? Is it your position that because your client got a substantial benefit, your client is a prevailing party? I think that that certainly can be argued on behalf of appellants, but I think it's more persuasive, the fact that Cadet offered costs and we accepted costs. That's the benefit of the bargain. We're not accepting anything they didn't offer. You're moving away that you've moved into a contract and we don't even have to look at the underlying statute at all. Not necessarily. Well, not necessarily is a little difficult for me. I thought your argument was you were a prevailing party, but it seems to me you're saying we don't need to get to that. We've got a contract. I think that's the primary analysis, not withstanding the fact that we are, that I believe we are a prevailing party as well. But I think that the Court never gets to the prevailing party analysis pursuant to the urgent case. And with that, judges, I need to defer to my co-counsel for their time. Thank you. Thank you, sir. Good morning, Your Honors. Mark Rosenberg on behalf of CNA. And I'll touch on what you just asked in just a moment. But I do want to point out the Court in its order of the 25th last week specifically asked for a reason why this case is distinguishable from the Champion Produce case. And I've made an exhibit right here, which I believe Your Honors have seen, when I sent it back there. And the Court asked what the impact of the Champion Produce case is. And I believe that there is no impact in this case because the cases are so obviously different. In the first place, in the Champion Produce case, it was a case where the plaintiff rejected the offer, whereas here we accepted the offer. The plaintiff rejected the offer. They went to trial. They got less than the offer of judgment was for. And in the Idaho statute sued upon, there was prevailing party language. Now, Your Honors has asked if you need to be a prevailing party. And I'm saving one minute for rebuttal. The Court has asked if you need to be a prevailing party. And I point to the statute here. There is no prevailing party language in contrast to the 1983 case sued under in Merrick and in Newsom and Erdman. And I would say that if you're litigating the case, you have to show you're a prevailing party. Here, we have an offer of judgment, which includes costs under the rule, and Cadet has admitted that costs are included. And costs are defined as including attorney's fees. And so I don't believe also that you don't need to prove you're a prevailing party. And I want to go on here to say there is no prevailing party statute. And in the Champion Produce case, I also want to point out that the Court was careful to state this. We can caution that our approval of these reasons is limited to contract actions in which damages are often more readily calculable than, for example, tort actions. We do not address the propriety of these reasons in non-contract actions. So here we have a case which is not a contract action. We have Cadet offering their offer of judgment. We have the plaintiffs here accepting the offer. Cadet admitting the rule includes costs as a matter of law. We have costs defined as including attorney's fees. So we have a contract here, and all the cases say that this is defining contract. So here, under the clear rules of Merrick, Newsom, and Erdman, attorney's fees were awardable, whereas in this case they were not. Now, in the Court's order of the 25th, you also asked for impact of cases from other jurisdictions. There's certainly not time for me to go through an entire list. Last Friday, however, I did file a brief, faxed it to the other parties, and it's going to be served. If Your Honors would like to see it, I can present it to you here and to the parties as well. If you just leave it with the clerk, that would be fine. I will do so, Your Honor. Thank you. And with that being said, oh, and I make one last point here, and then I'm going to defer to the other counsel here. In Seacoast as well, the Seacoast Foods case, the substantive statute did not define costs as fees. And that is opposite than here. And that's why the Seacoast went on to not award fees. And that was the same, and that's why the Seacoast Foods case doesn't apply. Anyway, thank you, Your Honors. Thank you, Mr. Rosenberg. Okay, we'll hear now from the appellee. Good morning. Good morning, Your Honors. For the record, David Corey for CADET. Back in the fall of 2003, while Judge Kunauer was entertaining these appellees' fee requests, this Court was almost simultaneously weighing the same issues in Champion Produce. In that case, this Court emphasized the importance of Champion Produce. In Champion Produce, this Court emphasized two words from the Merrick decision, two words that we still have not yet heard this morning. Properly awardable. Those are, CADET submits, the two most important words in the Merrick decision. Only those costs and fees which are properly awardable are triggered as a result of the acceptance of a Rule 68 offer. That is the holding in Merrick. That is the point that this Court made loud and clear in Champion Produce. And that is true whether the substantive statute authorizing attorney fees authorizes them separately or as a part of costs. Now, while Judge Kunauer did not have the benefit of the Champion Produce decision yet before him when he ruled below, he reached the same fundamental conclusion. He refused to award prevailing party attorney fees to parties who had not prevailed. And he gets to the conclusion that the Washington Consumer Protection Act wasn't in play here because of this bankruptcy stipulation. Is that, do I understand it right? That is, he does address that in his ruling refusing rules. Well, he more than just mentions it. I mean, that's the key of his decision that he says the other side would have a point, except for the fact that this Washington Consumer Protection Act claim was not at issue. That's correct, Your Honor. And he bases that on some letter from counsel that declines insurance coverage. That's right. And I'm prepared to address the special bankruptcy circumstances this morning, but it's Cadet's position that we need not reach that issue because the subsequent decision of this Court in Champion Produce is completely dispositive because it eliminates the perceived. And I'll let, we're going to let you get to that, but I think you ought to finish this issue first. Because if this is the base of the district court's opinion, and if we conclude he was erroneous in the way he got to it, then you're going to get to the alternative. The thing that bothers me is the same thing that Judge Silverman's bringing up. Here you've got a deal that you've worked out, you only go after insured risks, so that your client is going to be free, and I suppose that's the only way they could do it under the bankruptcy situation. So they've got, everybody thinks there's insurance over here on this Consumer Protection Act. Then the judge gets a letter from the carrier saying we don't cover it. And based upon the letter, the decision is made. That's a factual decision or legal and factual decision. And yet the district judge was going to rely on that completely over objection. Now, how could we sustain such a thing? Insurance companies are sometimes wrong when they say they don't have coverage. Weren't they entitled to challenge that in a hearing? No. No? They were not entitled. And the reason they weren't entitled is because they lacked standing in the first place, Your Honor. The only way that a proper challenge to the disclaimer coverage can be brought by these non-parties to the insurance contract would be if they brought a separate declaratory action. They haven't done it. Having not done that, they lack standing to collaterally attack or invite Judge Kuhnhauer to collaterally attack the insurance disclaimer as between Cadet and Royal. But the judge is relying on a fact, and you're saying they can't challenge that? They can challenge it. Suppose it's flagrant. Suppose it's completely wrong. It's certainly a matter they're entitled to challenge, but in a different forum, in a separate declaratory. Why would that be so? He's relying upon it not for coverage as such. He's relying on it as to whether or not costs are going to be awarded. Why wouldn't that be something he has to decide? Suppose you have two letters in. One says you do and one says you don't. I think Judge Kuhnhauer was wise to decline to get in the middle of the insurance fray. This was these were non-parties lacking standing who were collaterally attacking this insurance disclaimer. Now, again, the subsequent decision of this Court in Champion Produce obviates the entire bankruptcy issue and eliminates the perceived distinction between substantive statutes that authorize attorney's fees separately versus substantive statutes that authorize attorney's fees as a part of costs. That being so, there is no distinction between this case and Seacoast Foods. The only distinction that the appellants have ever been able to point to between this case and Seacoast Foods is the alleged difference in the language of the Florida CFS statute versus the language of Washington's CPA. And what this Court has instructed us in 2003 in Champion Produce is that that is a distinction without a difference. Either way, you still are limited to those costs that are properly awardable. You still go through the prevailing party analysis. Now, Judge Kuhnhauer ruled. He entered a finding of fact that these appellants had not prevailed on their CPA claim. Like in Seacoast, there were multiple causes of action pled. The amount actually recovered in the operative judgment was substantially less than the damages pled. And he found that there was simply not enough evidence in the record to enter a finding that they had prevailed on the CPA claim. Now, I can go on at further length about the sort of moving target characteristics of their CPA claims, but that's not really necessary because the Court's finding of fact on this issue holds sway today. They have not assigned error to his finding of fact. They have not alleged an abuse of discretion associated with his finding of fact. The Rule 68 offer was not limited to one of their particular causes of action, was it? No, it was not. It was a blanket invitation to resolve all claims of all kinds. You don't think it's possible for the district court to determine that there was time expended that was separable that you could look at to see that the counsel spent time pursuing the CPA claim? I think it's possible, certainly. But here, Judge Kuhnhauer found that they had not prevailed, and that ended the analysis. And his finding of fact, his still uncontroverted finding of fact on that issue, once again, holds sway in this Court. Well, you say we don't need to get all of this because of Champion. Champion is not squarely on point, is it? No, it's not. There are different facts. Mr. Rosenberg is right that there are some factual distinctions. The import of Champion Produce is that it eliminates the perceived distinction between substantive state statutes authorizing fees separately from costs versus statutes that authorize fees as part of costs. Champion blows up that distinction, and what we're left with is facts in this case that are 100 percent square with the facts in Seacoast Foods. Have you had a chance to look at the other circuits to see how they handle this issue? This seems to be something of first impression for us. I don't believe that it's a matter of first impression. There are some – there's a range of opinions on this issue among the circuits. However, this Court, when it entered the decision in Champion Produce, acknowledged that there was a circuit split. In other words, the fact that some other circuits have ruled differently on this issue changes nothing in the 20 months that have passed since the Champion Produce decision was published. This Court was aware of that circuit split then, and the fact that the circuit split still exists today, it really doesn't make any difference in cadets' view. I'm happy to answer other questions. Otherwise, I will yield to balance my time. Mr. Wallace, please. Thank you, Mr. Court. Thank you. Rebuttal, gentlemen. Thank you, Your Honor. John McDowell on behalf of Appellant Design Perfect, and I'm not clear how much time exactly has been reserved for rebuttal. I presume based on the time counsel took, we have a minute. Am I correct in that? I will be as quick as possible then to try to answer your questions. First, you asked the question, Your Honor, what's the contract? It's the offer, the acceptance, and then the judgment that is entered. That's the contract. Champion is not a contract case. Counsel for cadets said that Merrick defines properly awardable costs as what can be recovered. When a statute defines a fee as a cost, it is properly awardable. When you say the judgment, the offer, the acceptance, and then the judgment, you said the judgment is part of the contract? Yes. What terms of the judgment constitute the contract? Well, the existence of the judgment itself. Just the existence of the contract. Yes. That's sort of the memorialization of it, so to speak. The terms are in the statute and the offer and the acceptance. I ask this because the offer and the acceptance make no reference to attorney's fees, but the judgment does refer to attorney's fees. And that's where you get into the analysis under Erdman and Newsom. The cadet was the master. They drafted the offer, and it was silent on it, and they have to live with what they drafted. I want to address briefly for the Court that you asked. It's our position. There is a contract, and you don't even need to get to the prevailing party analysis. But the trial court said that issue in its first order is not dispositive, the prevailing party analysis. It said the same about the bankruptcy issue, and then it came back and it got into those anyways. The cases addressed in CR 68 offers and acceptance indicate that you don't even get to that prevailing party analysis, and that's how Champion and Seacoast are distinguishable because that underlying statute does not define them separately. In our case, in Seacoast and in Champion, they did. And finally, the United States Supreme Court has said in Buchanan and Farrar that when you have a judgment, you have a prevailing party if you want to go down that road. To read the rule otherwise would obviate the effect of Rule 68 under the Delta decision, which is to encourage settlements, because why would you accept a settlement, avoid a trial on the merits, and then have to go through this exercise of reproving your case when you already have a judgment on the merits, which is what appellants thought their clients were receiving. Thank you very much. Let me ask you a question. Yes. As I understand it, you are all through the Rule 68 when the letter comes in from the insurance carrier saying that any claim under the Consumer Protection Act is not covered by the policy. At that point, when the judge is going to have that before him, what did the appellants do? The appellants responded that it was not binding, and I can tell you why, Your Honor. First of all, that letter did not even apply to my client, Design Perfect, or at least one of the other appellants, first of all. Second of all, we told the court that we argued to the court. But you just lost me on something. Okay. I'm sorry. I thought all of the appellants are concerned about this issue. If the judge is right that there's no coverage and you've all agreed you're only going to go after coverage, it seems to me it schools out. Well, except for the fact that, again, if you read Merrick, excuse me, Erdmann and Cochise and the Newsom case, if a cadet can weigh the effect of that stipulation by offering to have judgment taken against it and not properly limiting it. All right. Okay. You're back to the contract. Just stick with me on this one. Okay. I apologize. Now, what did the appellants do when the letter is filed, I assume by the opposition, saying there's no coverage? What action did any of the appellants take? I think the appellants took or argued to the court that that is no more binding than our demand letter, which says what our claim is worth. The reason why is the clear law in Washington says that such attempts to exclude coverage are construed strictly against the carriers, and the burden is on the carrier to seek to move for declaratory judgment. And cadets said we should have moved for declaratory judgment, but the clear law in Washington So the argument that was raised was that it doesn't make any difference. Absolutely. And you did not challenge the position of the carrier that there was no coverage, which your position is, if I understand it, even if the carrier is right, we win. That is correct. But we did challenge it through the briefs. But you did what? We did challenge it through our arguments in the briefs that are in our court of appeal briefs as well. Wait. I was just asking you what you did. You did challenge the validity of the position that there's no coverage? Through the arguments we made to the trial court. Through the argument? Yeah. And did you ask for an evidentiary hearing or anything such as that? No, we did not, because the court itself said in its order that issue is not dispositive to me, because he realized he was giving issue preclusive effect to a letter, a coverage opinion that some attorney wrote. And I think you were right on in your first question. That's the question you asked. Regardless of what the district judge did, you've got a right to ask for anything you want. You may not get it. The question I'm asking is whether this issue is even before us if you did not put yourself in the position of asking for the opportunity to challenge the position that the carrier does not have coverage over the Consumer Protection Act claim. Well, and I think Cadet is attempting to stand the law, the coverage law on its head. And it is the carrier's affirmative duty in Washington to seek to clarify. Okay. So if I understand your position, you did not challenge the validity of the position the insurance carrier. You said it was irrelevant. I think we'll have to agree to disagree, Your Honor, because I believe that we did. Let me ask the same thing, kind of a different direction. How did the letter come to the attention of Judge Cunard through a declaration of counsel after we filed, after judgment was entered? So this was the motion for fees. Did it first come to the attention of the judge as part of the motion for reconsideration or was it before that? I think it was in the initial motion, the application for fees after judgment was entered, and we believe the contract was consummated. Mr. Wallace, anything else? Judge Pines? Okay. Thank you. Mr. Gallo, thank you all, gentlemen. The case just argued us a bit. Sir? Motion for one quick statement granted. Okay. Come to the microphone, would you, so we can record this one quick statement. Okay. The CR-68 offer and acceptance was an independent contract that was made after the bankruptcy had closed and, therefore, the letters discussing the stipulations were no longer effective because Cadet was out of bankruptcy and the waiver was for claims that had been brought while Cadet was out of bankruptcy. Cadet was in bankruptcy. So an independent contract made after the bankruptcy has closed is not subject to those letters. Thank you, gentlemen. No, no, I'm going to invoke the rule against perpetuities now and cut this off. Thank you, gentlemen. The case just argued is submitted. 03-36006, United States v. Deep Sea Fisheries. Each side will have 20 minutes.
judges: Wallace, Silverman, Paez